# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LEO HERRMAN, Jr.,                          )
                                           )
                        Plaintiff,         )
                                           )        **CIVIL ACTION**
v.                                         )
                                           )        **No. 12-1362-JWL**
CAROLYN W. COLVIN,[1]                      )
Acting Commissioner of Social Security,    )
                                           )
                        Defendant.         )
_____   )


## MEMORANDUM AND ORDER


Plaintiff, Leo Herrman, Jr., seeks review of a final decision of the Commissioner

of Social Security (hereinafter Commissioner) made after remand from the U. S. District

Court for the District of Kansas, in which the Commissioner denied Social Security

Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under

sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C.

§§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the

Commissioner's final decision as alleged by Plaintiff, the court ORDERS that judgment

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.    Background

This case has a long and tortuous history. In so far as is relevant here, Plaintiff first protectively filed for SSD and SSI benefits on January 20, 2004, alleging disability beginning November 15, 2003.[2] (R. 175-77, 816-19, 820, 929, 941). In proceedings before the Commissioner, a decision was issued on December 1, 2006 denying benefits, but on November 5, 2008 the Appeals Council granted Plaintiff's request for review, vacated the decision, and remanded for further proceedings. (R. 45-54, 126-28). After remand, the administrative law judge (ALJ) conducted further proceedings including a new hearing, and issued a decision again denying benefits on June 10, 2009. (R. 21-36). Plaintiff exhausted his remedies before the Commissioner, and in due course filed a complaint in this court seeking judicial review of that decision. (R. 10-17, 967-990); see also, Herrman v. Astrue, 09-1297-SAC (D. Kan. Sept. 24, 2009) (Doc. 1).

The court found errors in the Commissioner's decision, reversed it, and remanded the case for further proceedings to reevaluate the medical evidence, reevaluate the credibility of Plaintiff's allegations, properly evaluate the objective evidence in light of

_____

[2]The court notes that Plaintiff previously applied for benefits with the Social Security Administration, and that application was denied in a hearing decision dated November 14, 2003. (R. 127). That denial was affirmed by this court in an order dated January 14, 2005, and judgment was entered thereon on January 25, 2005. Id.; see also, Herrman v. Barnhart, 04-1126-WEB (D. Kan. Jan. 25, 2005) (Docs. 12, 13).

Plaintiff's diagnosis with fibromyalgia or chronic pain syndrome, and make residual functional capacity (RFC) findings in accordance with Social Security Ruling (SSR) 96-8p. (R. 95-113); see also, Herrman v. Astrue, 09-1297-SAC (D. Kan. Sept. 29, 2010) (Doc. 19) (all further citation to the court's Memorandum and Order will be to the administrative record in this case). On remand, the Appeals Council vacated the ALJ's decision dated June 10, 2009, and remanded the case to an ALJ for further proceedings consistent with the court's order. (R. 993-94).

The case was remanded to a different ALJ, Melvin B. Werner, who conducted further proceedings, held another hearing and issued a new decision dated October 21, 2011 again finding Plaintiff is not disabled, and denying Plaintiff's applications. (R. 929-41). Plaintiff once again sought review of the final decision of the Commissioner after remand (R. 899-925), but the Appeals Council declined to assume jurisdiction (R. 895-98) and Plaintiff filed a timely complaint with this court seeking judicial review of the decision. (Doc. 1). Plaintiff alleges that the ALJ erroneously formulated an RFC which is vague and ambiguous; that the ALJ improperly rejected the medical opinions of treating physicians, Dr. Fan, Dr. Preston, and Dr. Rodgman; and that the ALJ failed to properly evaluate the evidence when assessing the credibility of Plaintiff's allegations of symptoms and did not explain how he reached his credibility finding.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that Plaintiff has shown no error in the final decision of the Commissioner and affirms the decision on that basis. The court first addresses what is the final decision of the Commissioner in this case, and then considers whether Plaintiff has

met his burden to show error in that decision.  It addresses each of the errors alleged in Plaintiff's briefs.

## II.    The Final Decision

The Act provides that:

> "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . ., may obtain a review of such decision by a civil action commenced within sixty days . . .."

42 U.S.C. § 405(g).  Thus, the jurisdiction conferred on the court to review decisions of the Commissioner is limited to "final decisions" made "after a hearing to which [the plaintiff] was a party."  Califano v. Sanders, 430 U.S. 99, 108 (1977); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (citing Reed v. Heckler, 756 F.2d 779, 782 (10th Cir. 1985)).

In his Complaint, Plaintiff asserts that ALJ Werner issued a decision on October 21, 2011 finding Plaintiff was not disabled, that Plaintiff sought review by the Appeals Council of ALJ Werner's decision, and that he has exhausted all of his administrative remedies.  (Doc. 1, ¶¶ 5-7).  Plaintiff asks the court to review the decision and either find that Plaintiff is disabled and entitled to benefits, or remand the case to the Commissioner for further proceedings.  Id. at 2.  In his Brief, Plaintiff once again identified ALJ Werner's decision dated October 21, 2011 as the decision for which he seeks judicial review.  (Pl. Br. 2).  However, in the argument section of his Brief, Plaintiff makes no citation to ALJ Werner's decision issued October 21, 2011 (R. 929-41), but every citation in that Brief to the ALJ's decision is to the decision issued by ALJ Edmund C. Werre on

6

June 10, 2009 (R. 21-36). (Pl. Br. 20-25, <u>passim</u>).[3] This begs the question, what is the final decision of the Commissioner which the court is to review?

In this case, there were three distinct decisions made after three separate hearings to which Plaintiff was a party. (R. 45-54, 108-117) (first decision, dated Dec. 1, 2006, and made after a hearing held on October 19, 2006 (R. 824-57)); (R. 21-36) (second decision, dated Jun. 10, 2009, and made after a hearing held on April 7, 2009 (R. 858-94)); (R. 929-41) (third decision, dated Oct. 21, 2011, and made after a hearing held on September 9, 2011 (R. 1453-1503)). Therefore, the question is, which of these decisions is the "final decision" which is the object of the court's review? The administrative record reveals the procedural history of this case and demonstrates which decision is the "final decision" for the court's review.

The first decision, dated December 1, 2006 was vacated by the Appeals Council after its review, and the case was remanded to an ALJ for further proceedings and to issue a new decision. (R. 126-28). Therefore, it is not the "final decision of the Commissioner of Social Security" and may not be reviewed by this court. The second decision, dated June 10, 2009 was reviewed by Judge Crow of this court, was reversed, and the case was remanded to the Commissioner for further proceedings on September 29, 2010 because of

---

[3]In her Response Brief, the Commissioner pointed out that Plaintiff's argument and citations in support thereof referred to "an earlier, and now vacated, ALJ decision." (Comm'r Br. 5). Nevertheless, in his Reply Brief, Plaintiff did not acknowledge the Commissioner's observation. Once again, every citation in Plaintiff's Reply Brief was to ALJ Werre's decision dated June 10, 2009. (Reply 1-3, <u>passim</u>).

errors in the decision. (R. 967-90). Upon remand, the Appeals Council vacated the decision dated June 10, 2009, and remanded to an ALJ for further proceedings and a new decision. (R. 993-94). Because the second decision was vacated it cannot be the "final decision of the Commissioner of Social Security" for the court's review. On November 11, 2011, Plaintiff sought review of the third decision, dated October 21, 2011 (R. 899-925), but the Appeals Council declined to exercise jurisdiction over that decision and specifically noted that "The Administrative Law Judge's decision is the final decision of the Commissioner of Social Security after remand by the court." (R. 896). Thereafter, Plaintiff sought timely judicial review of that decision in this court, and it is that decision which is the "final decision of the Commissioner of Social Security" over which the court has jurisdiction to review, and Plaintiff at least tacitly acknowledged that fact in his Complaint and in his Social Security Brief. Although each of the earlier decisions was at least potentially the "final decision" of the Commissioner (and the second decision was the "final decision" which was reviewed by Judge Crow), each one of them except the third decision has been subsequently vacated by the Commissioner, leaving the third decision as the "final decision" for this court's review. It is that decision which the court now proceeds to review for errors as alleged by Plaintiff. Because evaluation of the medical opinions and evaluation of the credibility of Plaintiff's allegations of symptoms resulting from his impairments are both a part of a proper RFC assessment, the court will address those issues before addressing Plaintiff's arguments regarding the RFC assessment as a whole.

## III.     Evaluation of the Medical Opinions

Plaintiff claims the ALJ substituted his own opinion for the opinions of Plaintiff's treating physicians, Dr. Fan, Dr. Preston, and Dr. Rodgman and that the basis for his determination is not clear.  (Pl. Br. 22).  He also claims that the ALJ did not discuss the relevant factors for weighing medical opinions, rejected the opinions completely merely because they were not entitled to controlling weight, and failed to explain what lesser weight was accorded the opinions.  Id. at 22-23.  The Commissioner argues that the ALJ did not substitute his opinion for that of Plaintiff's physicians, but that he adopted the opinion of one of Plaintiff's long-term treating physicians, Dr. Malik.  (Comm'r Br. 5).  She argues that the ALJ carefully explained how and why he weighed each medical opinion, explained his bases for discounting the opinions of Dr. Preston, Dr. Rodgman, and Dr. Fan, and even recontacted Dr. Malik for clarification and explained his basis for according greater weight to Dr. Malik's opinion.  Id. at 5-10.

The Commissioner has promulgated a regulatory framework for weighing medical opinions based in large part upon a hierarchy of treatment, examination, or review of the medical records.  20 C.F.R. §§ 404.1527, 416.927.  A physician who has treated a patient frequently over an extended period of time (a treating source)[4] is expected to have greater

---

[4]The regulations define three types of "acceptable medical sources:"

"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.
        "Nontreating source:"  an "acceptable medical source" who has examined the

insight into the patient's medical condition, and his opinion is generally entitled to "particular weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003) (citing 20 C.F.R. § 416.927(d)(2)).  Moreover, a treating physician's opinion may be entitled to "controlling weight" if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2013) ("Giving Controlling Weight to Treating Source Medical Opinions"); and Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).

But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing 20 C.F.R. 416.927(d)(1), (2)); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d

_____

claimant, but never had a treatment relationship.  Id.
    "Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

784, 789 (7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir.

1984)).

Even if a treating source opinion is not given controlling weight, it is "still entitled

to deference and must be weighed using all of the factors provided in 20 C.F.R.

§ 404.1527 and 416.927." <u>Watkins</u>, 350 F.3d at 1300. However, the court will not insist

on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight.'" <u>Oldham v. Astrue</u>, 509 F.3d

1254, 1258 (10th Cir. 2007) (quoting <u>Watkins</u>, 350 F.3d at 1300). And, "if the ALJ

rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing

so." <u>Id.</u> (citing <u>Miller v. Chater</u>, 99 F.3d 972, 976 (10th Cir. 1996) (quoting <u>Frey v.

Bowen</u>, 816 F.2d 508, 513 (10th Cir. 1987)).

Contrary to Plaintiff's argument, the ALJ gave a quite thorough and

comprehensive explanation of his evaluation of the medical opinions. (R. 935-38). After

having summarized the record evidence, the ALJ noted that he had "accorded substantial

weight to the opinion of the claimant's treating rheumatologist, Basit Malik, M.D., whose

opinion regarding the claimant's functional capacities has been adopted in the [ALJ's]

residual functional capacity assessment." (R. 936). He then stated eight specific reasons

for according "substantial weight" to Dr. Malik's opinion. (1) He is a rheumatologist

who is an expert in fibromyalgia, and who has (2) a long-term continuing treatment

relationship with Plaintiff. His opinion is consistent with (3) the diagnostic imaging,

11

(4) the electrodiagnostic testing, (5) the pulmonary function testing, and (6) the physical examinations discussed in the ALJ's summary of the record. And, Dr. Malik's opinion is (7) well supported by his treatment record and (8) consistent with the longitudinal medical record. <u>Id.</u>

The ALJ explained that he had "also considered the opinions that have been submitted by three of the claimant's previous treating physicians," Dr. Preston, Dr. Rodgman, and Dr. Fan. <u>Id.</u> He gave "little weight" to Dr. Preston's opinion, and explained that it is not entitled to controlling weight because (1) it is not supported by Dr. Preston's objective findings, and that (2) the short treatment relationship with Dr. Preston, and (3) Dr. Preston's essentially normal findings justify giving "little weight" to the opinion. (R. 937). He explained that Dr. Rodgman's opinion is not entitled to controlling weight because it is (1) not well support by Dr. Rodgman's objective findings, and that the opinion was given "little weight" because (2) it is not based on a longstanding treatment relationship, (3) it is not well supported by Dr. Rodgman's subsequent findings, and (4) it is not well supported by findings of other sources. <u>Id.</u> Finally, he acknowledged that Dr. Fan has a longstanding treatment relationship with Plaintiff and that Dr. Fan's findings are consistent with those of Dr. Preston and Dr. Rodgman, but he expressed six reasons for discounting Dr. Fan's opinion, and found that it is entitled to only "little weight." (R. 938). He found that the opinion was not entitled to controlling weight because it is (1) not supported by Dr. Fan's examination findings or (2) by claimant's reported good response to narcotic pain medication. <u>Id.</u> He further discounted

the opinion because Dr. Fan noted (3) only mild stenosis and (4) a lack of focal neurological findings and because (5) electrodiagnostic testing has been essentially normal and (6) treating neurologists have found no significant abnormalities. Id.

Despite the ALJ's thorough discussion of these four medical opinions, Plaintiff addresses none of the reasons given by the ALJ to accord "significant weight" to Dr. Malik's opinion or to discount the other opinions and accord them only "little weight." And the court's review discloses that these reasons are supported by the record evidence. Plaintiff's assertion that the ALJ substituted his own opinion for that of Drs. Preston, Rodgman, and Fan is belied by the ALJ's specific explanation that he had adopted Dr. Malik's opinion in his RFC assessment. Despite Plaintiff's contrary argument, the decision reveals that the ALJ considered the regulatory factors for weighing medical opinions, and the reasons he gave in the decision for according weight to those opinions reflect those factors. Moreover the decision is sufficiently specific to make clear the weight the ALJ gave to the medical opinions and the reasons for that weight, in accordance with Oldham. Finally, the ALJ did not discount the opinions of Dr. Preston, Ridgman, and Fan merely on the basis that he found them unworthy of controlling weight, but he specifically expressed additional reasons for discounting them further. Plaintiff has shown no error in the ALJ's evaluation of these medical opinions.

## IV.    The Credibility Determination

Plaintiff claims the ALJ did not conduct a proper credibility analysis. Specifically, he points to portions of his testimony that support a finding of credibility and argues that

the ALJ failed to assess credibility based upon this evidence, never explained his credibility finding, failed to consider credibility factors other than daily activities, and used improper "sit and squirm jurisprudence" in considering Plaintiff's behaviors at the hearing. The Commissioner argues that Plaintiff's brief merely asks the court to reweigh the evidence and that it is proper for the ALJ to cite to his own observations of Plaintiff's hearing demeanor along with other factors for evaluating credibility.

The court's review of an ALJ's credibility determination is deferential. Credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

As the parties agree,

The framework for the proper analysis of Claimant's evidence of pain is set out in <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

<u>Thompson</u>, 987 F.2d at 1488 (dealing specifically with pain).

Here, the ALJ applied this standard in evaluating the credibility of Plaintiff's allegations of symptoms resulting from his impairments, and found that Plaintiff's allegations are not credible. (R. 933-34). In the RFC analysis that followed, he stated his reasons for finding Plaintiff not credible, noting that the medical evidence did not support Plaintiff's allegations, that Plaintiff's active lifestyle is inconsistent with his allegations of extreme limitations, and that his work history of only sporadic work at low earnings suggests low motivation. (R. 935-36). Finally, he found that Plaintiff's complaints are exaggerated and inconsistent with the other evidence. <u>Id.</u> at 938-39.

Plaintiff acknowledges the ALJ's consideration of his daily activities, and does not argue that the discussion in that regard is erroneous. Rather, he argues that the ALJ did not consider any of the other credibility factors. This argument ignores the ALJ's stated reasons for finding Plaintiff's allegations not credible, and is therefore without merit. Plaintiff's argument regarding "sit and squirm jurisprudence" relates once again to ALJ Werre's decision dated June 10, 2009 (Pl. Br. 25) (citing R. 34), and fails to recognize that the final decision of the Commissioner which is at issue here does not rely upon such rationale.

The record evidence supports the rationale given by the ALJ to find Plaintiff's allegations not credible and once again Plaintiff has failed to demonstrate error in the decision at issue.

## V. The RFC Assessment

Plaintiff claims the RFC assessed by the ALJ is vague and ambiguous. He argues that it is vague, contradictory, and seemingly unrelated to the evidence. He cites to allegedly inconsistent findings by the ALJ and argues that the ALJ failed to give specific, legitimate reasons for discounting the opinions of Dr. Preston, Dr. Rodgman, and Dr. Fan. The Commissioner responds that the RFC is not ambiguous, and points out that the allegedly inconsistent findings cited by Plaintiff relate to ALJ Werre's decision dated June 10, 2009, and are not findings in the final decision of the Commissioner. The court agrees with the Commissioner.

As Plaintiff cites, ALJ Werre's decision apparently contained inconsistent findings. However, that fact is irrelevant to the court's review of the final decision of the Commissioner in this case--ALJ Werner's decision dated October 21, 2011. As the Commissioner points out, ALJ Werre's decision was vacated by the Appeals Council, and ALJ Werner's decision does not contain such inconsistencies.

Moreover, as discussed above, the ALJ properly accorded "substantial weight" to Dr. Malik's opinion and provided specific, legitimate reasons to accord only "little weight" to the opinions of Drs. Preston, Rodgman, and Fan. Resting the RFC assessment upon that rationale was not error.

Finally, the RFC assessment in this case was neither vague nor ambiguous. As the court noted previously, the RFC analysis (which occupied more than six pages in the decision) was quite thorough and comprehensive. (R. 932-39). It contains an extensive summary of the evidence, evaluation of the medical opinions, and analysis of the credibility of Plaintiff's allegations of symptoms resulting from his impairments. It also clearly explains how the ALJ arrived at each of his findings in the RFC analysis. As but one example of this analysis, the court quotes one paragraph from the middle of the assessment:

> In sum, the claimant's degenerative disc disease and fibromyalgia result in credible exertional limitations, including pain and fatigue, that justify limiting the claimant to a reduced range of light work as reflected in the above residual functional capacity assessment. His asthma, while generally well controlled, warrants environmental restrictions limiting the claimant's exposure to pulmonary irritants, temperature extremes and humidity. Although the claimant's medical records show no definite medical cause for his upper extremity pain, this pain is substantiated by Dr. Malik's treatment records. Accordingly, the undersigned has limited the claimant's reaching, handling, fingering and feeling. The medical evidence does not, however, support any further reduction in the claimant's residual functional capacity.

(R. 935).

Plaintiff simply has shown no vagary or ambiguity in the RFC assessment.

Because Plaintiff has shown no error in the final decision of the Commissioner after remand, the court must affirm that decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the final decision of the Commissioner.

Dated this 26th day of February 2014, at Kansas City, Kansas.


s:/ John W. Lungstrum_____
**John W. Lungstrum**
**United States District Judge**